[Cite as *Green & Green, Lawyers v. Trimbach*, 2018-Ohio-194.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| GREEN & GREEN, LAWYERS | : | |
| | : | |
| Plaintiffs-Appellees | : | Appellate Case No. 27550 |
| | : | |
| v. | : | Trial Court Case No. 16-CV-3969 |
| | : | |
| RODNEY TRIMBACH, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of January, 2018.

. . . . . . . . . . .

FREDRIC L. YOUNG, Atty. Reg. No. 0059544 and JONATHAN F. HUNG, Atty. Reg. No. 0082434, 800 Performance Place, 109 N. Main Street, Dayton, Ohio 45402
    Attorney for Plaintiffs-Appellees

DWIGHT D. BRANNON, Atty. Reg. No. 0021657 and MATTHEW C. SCHULTZ, Atty. Reg. No. 0080142, 130 W. Second Street, Suite 900, Dayton, Ohio 45402
    Attorney for Defendants-Appellants

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Rodney and Lisa Trimbach and Performance Site Development, LLC, ("PSD") appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to the law firm of Green & Green on its claims for collection on account and unjust enrichment. For the following reasons, the judgment of the trial court will be affirmed.

### Facts and Procedural History

{¶ 2} On August 1, 2016, "Green & Green, Lawyers" filed a complaint for collection on accounts and unjust enrichment against Mr. and Mrs. Trimbach and PSD, an Ohio limited liability company of which Mr. Trimbach is the sole and managing member.

{¶ 3} According to the engagement letter, which was attached to the complaint, Green & Green was hired to represent the Trimbachs and PSD in a pending foreclosure action against the Trimbachs' residence and in a malpractice action.[1] Pursuant to an email sent from Green & Green attorney Jonathan Hung to Mr. Trimbach a few days later, which was also attached to the complaint, Mr. Trimbach started a "third account" with Green & Green after some discussions with the attorneys; the third account was for dissolution of M&R, LLC, in which Mr. Trimbach had a 50% interest.[2] Several billing

---

[1] The engagement letter is heavily redacted. There are references in the record suggesting that the malpractice action involved an attorney who had represented the Trimbachs in the past, but no specific information about this matter was presented, and there was no claim in this lawsuit for any fees related to the malpractice representation.

[2] The exact nature of the relationship between PSD and M&R is unclear from the record, but ownership interests and/or clients appear to have overlapped, because the parties' emails indicate that the dissolution of M&R affected PSD.

statements for the account numbers associated with the two matters (the foreclosure and dissolution of M&R) were also attached to the complaint.

{¶ 4} The Trimbachs filed pro se motions to dismiss the complaint against them, and Mr. Trimbach filed a motion to dismiss on behalf of PSD. The motions to dismiss alleged that the proper parties had not been named in Green & Green's complaint and that some of the bills presented were for matters about which the firm had "not provided a signed contract for any such legal services." Green & Green opposed the motions to dismiss.

{¶ 5} On October 13, 2016, the trial court granted the motion to dismiss Mrs. Trimbach from the claim for legal services provided to M&R, on the basis that she was not a member of M&R, and the complaint alleged only that Mr. Trimbach had hired the firm to provide services dissolving M&R (and protecting PSD's interests) and owed money to the firm on behalf of M&R. The court did not dismiss the claims against Mrs. Trimbach with respect to fees incurred in the foreclosure action. Mr. Trimbach's motion to dismiss was overruled in its entirety, and his motion on behalf on PSD was stricken because, as a non-attorney, he was not permitted to file a pleading on behalf of a corporation or similar entity.

{¶ 6} After the motions to dismiss were resolved, neither the Trimbachs nor PSD filed an answer to Green & Green's complaint.

{¶ 7} On January 18, 2017, Green & Green filed a Motion for Default Judgment and Summary Judgment against the Trimbachs and PSD for the fees owed in the foreclosure and M&R dissolution (accounts 27893 and 27894, respectively). The firm sought default judgment on the question of the Trimbachs' and PSD's liability, because

they had not filed answers, and the firm sought summary judgment on the amount of damages, asserting that there was no genuine issue of material fact as to the amount owed or the reasonableness of its fees. The Trimbachs and PSD opposed the motion for default and summary judgment.

{¶ 8} On March 17, 2017, the trial court granted in part and denied in part Green & Green's motion for default judgment and summary judgment. The trial court denied the motion for default judgment, noting that Green & Green had conceded that default judgment "may not be warranted," and finding that, although no answers were filed, the Trimbachs' motions to dismiss constituted an effort, under Civ.R. 55(A), to "otherwise defend" against Green & Green's claim. The trial court granted Green & Green's motion for summary judgment on the Trimbachs' and PSD's liability for payment of its fees and on the reasonableness of the fees.

{¶ 9} The Trimbachs and PSD appeal, raising one assignment of error. They challenge the trial court's decision granting summary judgment to Green & Green for the fees owed on their accounts. Specifically, they challenge whether any fees were owed by PSD and whether sufficient evidence was presented to establish the reasonableness of all the claimed fees. No issues are raised on appeal regarding the trial court's rulings on the motions to dismiss.

### *Summary Judgment Standard*

{¶ 10} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor*

*Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 11} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 12} We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness,* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond,* 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

### *Evidence Regarding Attorney Fees and Reasonableness*

{¶ 13} Factors to be considered in determining the reasonableness of legal fees include, inter alia, (1) time and labor, novelty of issues raised, and necessary skill to pursue the course of action; (2) customary fees in the locality for similar legal services; (3) the result obtained; and (4) the experience, reputation, and ability of counsel. *Baker &*

*Hostetler, L.L.P. v. Delay*, 10th Dist. Franklin No. 08AP-1007, 2009-Ohio-2507, ¶ 29, citing *Brannon & Assoc. v. Barnard*, 2d Dist. Montgomery No. 16693, 1997 WL 797712 (Dec. 31, 1997).

{¶ 14} An independent expert is not always required to establish the reasonableness of claimed attorney fees. *Barnard* at * 3, citing *Joseph G. Stafford & Assoc. v. Skinner*, 8th Dist. Cuyahoga No. 68597, 1996 WL 631112 (Oct. 31, 1996). Testimony of the attorney seeking recovery of fees that the case involved complex issues, that the fees were within a reasonable range for that type of case, and that the client never questioned billing statements sent to the client constitutes sufficient evidence to establish the reasonableness of the charged fees, thereby negating the need for independent expert testimony. *Baker & Hostetler* at ¶ 30, citing *Thomas & Boles v. Burns*, 8th Dist. Cuyahoga No. 64995, 1994 WL 110950 (Mar. 31, 1994). This is especially true where there is no documentary evidence from the client indicating a dispute concerning the attorney's fees as excessive or unreasonable during the attorney-client relationship; under such circumstances, the court may reasonably discount allegations by the client that he or she expressed dissatisfaction about the fees before the attorney-client relationship ended, and independent expert testimony from another attorney is not required to establish the reasonableness of the fees. *Reminger & Reminger Co., L.P.A. v. Fred Siegel Co., L.P.A.,* 8th Dist. Cuyahoga No. 77712, 2001 WL 210024, * 8 (March 1, 2001); *Barnard* at * 3, citing *Stafford & Assoc.*, *supra*.

{¶ 15} In support of its motion for summary judgment on the Trimbachs' and PSD's liability for its fees and the reasonableness of its fees, Green & Green relied on the affidavit of Jonathan Hung, lead counsel in the foreclosure action and the dissolution of

M&R.  Hung's affidavit addressed the circumstances and terms under which the firm had agreed to represent the Trimbachs and PSD; redacted copies of the engagement letters and related emails were attached.   The affidavit further stated that the firm had provided legal services as requested.

{¶ 16}  Hung also averred that his practice included "debt collection and foreclosure defense, as well as business governance and litigation" and that he had experience with the judicial sale of property and receiverships.   He stated that he had reviewed all the charges and the case file in this case, and that all charges on the accounts were "accurate, reasonable, and in accordance with directions [he] received from the Trimbachs during the course of representation."

{¶ 17}  Hung's affidavit further stated that, in his experience, the fees charged for his services and those of his "fellow staff" at Green & Green – which he detailed as $300 per hour for principals, $200 for associate attorneys, and $100 for support staff – were reasonable.   He stated that, notwithstanding the parties' fee agreements, the firm had agreed to reduce some of the Trimbachs' fees, at their request and "after much discussion"; the firm reduced all fees related to the foreclosure by 15% and the hourly rate of one associate attorney, Sean Culley, by 15% in the M&R matter.   Hung stated that, to his knowledge, after the above concessions were made, the Trimbachs "had no objections to the fees charged," and that during their conversations, Mr. Trimbach "appeared to be aware of the fees charged to the two accounts."

{¶ 18}  According to Hung's affidavit, after informal efforts to collect payment were unsuccessful, he made a written demand for payment.   Neither the Trimbachs nor PSD made any payment or otherwise contacted Green & Green about payment.   At that time,

the fees in the two matters totaled $35,331.70; $31,556.14 was owed in relation to the efforts to dissolve M&R, and $3,775.56 was owed for the firm's representation of the Trimbachs in the foreclosure action.

{¶ 19} In response to Green & Green's motion for default judgment and summary judgment, the Trimbachs asserted that Green & Green was not entitled to default judgment or summary judgment and, although they had not filed cross-motions for summary judgment, asserted that they and PSD were entitled to summary judgment. Affidavits of Mr. and Mrs. Trimbach were attached.

{¶ 20} In Mr. Trimbach's affidavit, he acknowledged that he had been represented by Hung and Sean Culley of Green & Green in the foreclosure and M&R matters and had been charged on an hourly basis in both matters. He asserted that, although his wife had signed the engagement letter, she had no interest in the house and had been named in the foreclosure action only "because of her dower rights." The affidavit expressed frustration about a lack of progress in the M&R matter, and stated that Green & Green had been "unable to eliminate the judgment" in the foreclosure action, which Mr. Trimbach attributed to errors by a previous attorney. He also referenced emails to Hung from early 2016 in which he expressed dissatisfaction with the pace and progress of work done by the firm on his behalf, and stated that he was not being paid on "certain contracts" because issues entrusted to the firm had not been resolved. Finally, Mr. Trimbach stated that Green & Green had not done "any work on behalf of Performance Site Development other than filing the incorporation documents, for which Mr. Hung has already been paid." The affidavit did not address the reasonableness of the fees charged by Green & Green or identify any specific charges that the Trimbachs disputed.

{¶ 21} The emails attached to Mr. Trimbach's affidavit evinced his frustration at the pace at which issues involving the dissolution of M&R were being resolved, the issuance of subpoenas to some of M&R's clients, and losing business because of the "stupidity" of others involved in the cases. The emails also demonstrated Mr. Trimbach's frustration with the slow pace of discovery in some of the matters related to M&R and what he considered to be harassing tactics of the opposing party in that matter; however, he also encouraged counsel to engage in similar tactics in response (i.e., to issue what Mr. Trimbach said would be subpoenas "not for any reason other than to show them how much it interrupts their business"), a tactic which counsel discouraged. The emails, which included some of Hung's responses, also indicated that there were liens on some of M&R's assets, such that they could not be sold without the involvement and/or cooperation of the IRS.

{¶ 22} Mrs. Trimbach's affidavit stated that she had no interest in the property that was the subject of the foreclosure action, except "possible dower rights," which "had already been foreclosed on." She stated that she was present during a meeting between her husband and Green & Green attorneys regarding the dissolution of M&R. During this meeting and in several phone calls between Mr. Trimbach and Hung, Mrs. Trimbach heard her husband "express his dissatisfaction with the work being done by Jonathan Hung and the other attorneys at Green & Green, and with the amounts being charged for that work." Mrs. Trimbach's affidavit did not specifically address the reasonableness of the fees charged or dispute that fees were owed.

{¶ 23} Green & Green filed a reply in support of its motion for default judgment and summary judgment. Attached to the reply was a second affidavit from Hung,

including several email correspondences between Hung and Mr. Trimbach. These documents described or provided evidence of Hung's efforts to explain to Mr. Trimbach why the effort to dissolve M&R was "progressing slowly," including claims by another person to an ownership interest in M&R property and the basis for that person's subpoenas to PSD's clients; the affidavit also referenced the federal and state tax liens on Mr. Trimbach's real property. The attached emails to Mr. Trimbach explained, among other things, that there was a factual issue as to what property was owned by M&R, and that, in light of the disputes and notwithstanding Mr. Trimbach's frustration with opposing parties' interviews with his clients, all parties were "entitled to seek information and documents that are reasonably calculated to lead to admissible evidence."

{¶ 24} With respect to attorney fees, the affidavit stated that, at an April 8, 2016 meeting, Hung explained to Mr. Trimbach the "firm's actions" and why M&R's dissolution "was progressing slowly." Hung's affidavit further stated:

> Mr. Trimbach raised no objections at that time to my work regarding the
> foreclosure action filed against him and his wife, Defendant Lisa Trimbach
> * * *. He also did not inform me specifically of any unjustified or erroneous
> billings.

An email which followed this meeting was attached to the affidavit. In the email, dated April 21, 2016, Hung stated:

> This is a follow up to our brief conversation on April 8, 2016. At that
> time, you indicated that you were unsatisfied with my firm's representation,
> and that you did not believe that we were entitled to the amount of fees
> invoiced. In response, I suggested that you make an offer to settle for an

amount you feel is reasonable compensation for the unpaid fees. So far, we have received nothing.

We have previously discussed your dissatisfaction with the case's progress, but I have attempted to explain each issue as when [sic] was raised to me. I have provided a breakdown of the status of each case, and how you may wish to move forward with each. * * *

As you are aware, we tried to bill you on a monthly basis. Our engagement letter encourages you to bring to our attention any unjustified or erroneous billings during the course of representation. When you asked us to lower the hourly rate of Mr. Culley, who is an associate, we agreed to do so, and did so by providing a credit commensurate with the time Mr. Culley has spent on this case. Having received no specific objections to the time spent on your matter, I stand by the accounting of hours.

{¶ 25} When it granted Green & Green's motion for summary judgment, the trial court found, with respect to PSD, that Hung's initial affidavit presented "credible, cognizable evidence of every element of Plaintiff's claims on an account," including the nature of the parties' agreements, detailed and dated charges, the reasonableness of the time and amount expended, the total due on the account, and "even certain billing concessions made or discounts given" in response to concern raised by Mr. Trimbach. Hung presented a detailed billing statement of services performed related to M&R's dissolution (Exhibit 4 to his January 18, 2017 affidavit) and, although this exhibit does not expressly reference PSD, it is clear from the emails attached to Mr. Trimbach's affidavit that the interests of M&R overlapped and were intertwined with the interests of PSD, and

that the representation discussed in the emails dovetailed with the engagement letter (email) for the M&R matter.

{¶ 26} With respect to Mr. Trimbach's argument that he had already paid for Green & Green's services related to PSD, the trial court concluded that "payment is a defense" and that Mr. Trimbach had not presented any evidence showing that the amount owed had been reduced by any payments or that he had objected to the firm's failure to properly credit any payments made on behalf of PSD. The court "decline[d] to find that Mr. Trimbach's unsubstantiated averment regarding complete payment of PSD's legal fees suffices to create a genuine issue of material fact regarding Defendant PSD's indebtedness for the amounts claimed to be due" on that account.

{¶ 27} The trial court also found no genuine issue of material fact as to Mrs. Trimbach's liability for the legal fees related to the foreclosure, because she had expressly agreed to pay for those services by signing the engagement letter, regardless of whether she personally benefitted from such services; the court further found that Mrs. Trimbach's dower interest in the property was a "cognizable ownership interest."

{¶ 28} Finally, the court concluded that Green & Green had established that there was no genuine issue of material fact regarding Mr. Trimbach's liability on both accounts; he did not deny signing the engagement letters, and he presented no evidence that the amounts charged by the firm were unreasonable. The court recognized that Green & Green, as the plaintiff, bore the initial burden of establishing the reasonableness and fairness of its fees, but further found that an attorney's own testimony is generally accepted as adequate proof of the reasonableness of the fees sought. It also found that the Trimbachs had failed to demonstrate a genuine issue of material fact that they had

objected to the reasonableness of any of the fees that remained at issue. Concessions had been previously made by the firm on other fees, and Hung's unrefuted affidavit stated that no objections had been lodged after the concessions were made. The court found that the Trimbachs' references to expressions of dissatisfaction with the work being done were not analogous to objections to the reasonableness of the fees.

{¶ 29} The trial court did not err in granting summary judgment to Green & Green on the Trimbachs' liability for and the reasonableness of its fees. Mr. Trimbach's affidavit and the attached emails demonstrate his dissatisfaction with the pace of the litigation and the manner in which discovery by other parties involved in the dissolution of M&R interfered, in his view, with his business relationships. However, these emails do not indicate any specific disagreement with how his attorneys were handling the matters. Moreover, the email discussions reflect the complexity of the tasks undertaken, including an apparent disagreement with the other owner of M&R about the proportion of assets to which Mr. Trimbach was entitled, the suggestion by others involved in the dissolution that Mr. Trimbach had "cooked the books," which contributed to the amount of discovery being conducted, and the existence of federal and state tax liens on some of the property/properties involved in the case. We are cognizant of the frustrations inherent in litigation, but the existence of such frustrations, without more, does not establish any unreasonableness of the attorney fees charged in the case.

{¶ 30} Moreover, we agree with the trial court's conclusion that Hung's affidavits satisfied Green & Green's initial burden of establishing the terms of the parties' fee agreements, what work had been performed, and the fairness and reasonableness of the fees charged. In response, the Trimbachs and PSD did not object to any specific

charges or present evidence, beyond their own assertions, that any of the claimed work had not been performed. The Trimbachs and PSD also did not present any expert testimony that the charges were unreasonable. Under these circumstances, Green & Green was not required to present expert testimony, beyond that provided by the attorney who worked on the case, concerning the reasonableness of its fees. Summary judgment was appropriate.

{¶ 31} The assignment of error is overruled.

{¶ 32} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .


HALL, J. and WELBAUM, J., concur.


Copies mailed to:

Fredic L. Young
Jonathan F. Hung
Dwight D. Brannon
Matthew C. Schultz
Hon. Mary L. Wiseman