[Cite as *Thrasher, Dinsmore & Colan, LPA v. Ross*, 2024-Ohio-1594.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

THRASHER DINSMORE & DOLAN,
LPA,              :

                  :

      Plaintiff-Appellee,

                  :            No. 113298

      v.

WILLIAM J. ROSS, ET AL.,          :

      Defendants-Appellants.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 25, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-967230

---

### *Appearances:*

Thrasher Dinsmore & Dolan, LPA, Samuel T. O'Leary, and
Christopher R. Elko, *for appellee.*

Arnold, Gruber & Haren, LTD, Jill C. McQueen, and Jon
A. Troyer, *for appellants.*

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Defendants-appellants, William J. Ross ("Ross"), AMG Marine
Holdings, LLC, and Fairport Harbor Holdings, Ltd. (collectively, "appellants"),
appeal from the trial court's judgment granting the motion for summary judgment

of plaintiff-appellee, Thrasher Dinsmore & Dolan, LPA ("TDD"). For the reasons that follow, we affirm.

## I. Background

{¶ 2} In August 2022, TDD filed suit against appellants regarding unpaid attorney fees for legal services it rendered to appellants in various matters. TDD's complaint asserted claims for breach of contract, unjust enrichment, promissory estoppel, and action on an account. Attached as Exhibit A to TDD's complaint was a "Billing Summary" that TDD emailed to Ross on July 26, 2022. The summary identified the separate amounts due on each of six invoices dated from February 25, 2020, to November 25, 2020, and reflected a total balance due of $59,679.70. Appellants filed an answer denying the allegations of the complaint.

{¶ 3} TDD subsequently filed a motion for summary judgment regarding each of its claims. TDD supported its motion with the affidavit of Ezio A. Listati ("Listati"), who averred that he is a partner with TDD, and that on May 21, 2018, Ross signed an engagement letter retaining TDD in the matter of *PurUS Health, LLC, et al. v. Good Nutrition, et al.*, Cuyahoga C.P. No. CV-15-851394.[1] Listati further averred that in November 2018, Ross began consulting with TDD regarding other legal issues that were impacting him and his companies.

{¶ 4} Listati averred that in early February 2020, when "those issues boiled over," at Ross's request, TDD attorneys began representing appellants in four

---

[1] A copy of the engagement letter was attached to Listati's affidavit.

lawsuits: (1) *Ohio Dev. Servs. v. Hanover Marine LLC, et al.*, Lake C.P. No. CV-16-02109 (the "cognovit judgment lawsuit"); (2) *Hanover Marine, LLC, et al. v. Fairport Harbor Holdings, Ltd.*, Cuyahoga C.P. No. CV-17-879490 (the "Cuyahoga County lawsuit"); (3) *TLC Yachts, LLC v. Fairport Harbor Holdings, Ltd., et al.*, No. 1:20-cv-00311-JG (E.D.Ohio) (the "federal lawsuit"); and (4) *TLC Yachts, LLC v. Fairport Harbor Holdings, Ltd., et al.*, Lake C.P. No. CV-20-00407 (the "Lake County lawsuit").

{¶ 5} Listati averred that approximately one month later, on March 2, 2020, TDD sent Ross an engagement letter related to TDD's representation of appellants in three of the four lawsuits (the Lake County lawsuit was filed on March 5, 2020, two days after the engagement letter was sent). On March 4, 2020, the federal lawsuit was dismissed without prejudice. On March 18, 2020, the cognovit judgment lawsuit was consolidated with the Lake County lawsuit, and on March 25, 2020, the court in the Cuyahoga County suit determined that it was without jurisdiction to proceed. Thus, according to Listati, as of March 25, 2020, the only remaining pending matter was the Lake County lawsuit.

{¶ 6} Listati averred that TDD represented appellants in the Lake County matter until March 4, 2020, when Richard Selby ("Selby"), an attorney with Dworkin & Bernstein, began representing AMG Marine Holdings, LLC. TDD continued to represent Ross and Fairport Harbor Holdings, Ltd.

{¶ 7} Listati averred that throughout TDD's representation of appellants, Ross repeatedly promised to execute and return the March 3, 2020 engagement

letter to TDD.  Listati further averred that prior to a March 31, 2020 hearing in the Lake County suit, he and Selby met with Ross at Selby's office.  At that meeting, when Listati again asked Ross to sign the engagement letter, Ross "responded by stating we should not worry because he 'always paid his lawyers' and would execute said engagement letter, which he never executed."  Listati averred that based on the initial May 2018 engagement letter and Ross's repeated promises, TDD continued to perform legal services for appellants until April 22, 2020, when it withdrew from any further representation of appellants.  The termination letter, which was attached as an exhibit to Listati's affidavit, informed Ross that one of the reasons TDD decided to terminate its representation was because "[r]egarding the Fairport Harbor/AMG matter that the firm handled for you in Lake County, you owe approximately $60,000 for payment and fees which are seriously in arrears and over 120 days."

{¶ 8}    Also attached to TDD's motion for summary judgment were printouts of emails between TDD and Ross from March 3, 2020, to March 24, 2020.  The emails reflected that on March 3, 2020, TDD sent Ross the engagement letter regarding the three cases and asked him to sign and return the executed letter.  On March 17, 2020, TDD attorney Leo Spellacy ("Spellacy") again asked Ross to execute and return the engagement letter, telling him, "We need the engagement letter signed.  We have put a significant amount of work in on this matter.  Please send this back to me today."  On March 24, 2020, Spellacy again emailed Ross and asked him to sign the engagement letter.  Later that day, Ross replied, "Sorry about the

delay. Just returned home. I participated in a call with Ezio [Listati] and Ric [Selby] this afternoon. Ezio was pressed for time so the call was a bit hurried. I would like to discuss the case with you in the morning. Anytime works for me." Spellacy responded, "Sounds good. I know you have a lot going on. Just a housekeeping item."

{¶ 9} Also attached to TDD's motion for summary judgment were Listati's calendar entries from October 17, 2019, through March 31, 2020, reflecting meetings with Ross regarding the Lake County lawsuit, conference calls with Ross, the drafting of a show cause motion, and Listati's appearance on March 31, 2020, at an oral hearing in the Lake County Common Pleas Court.

{¶ 10} In its motion for summary judgment, TDD argued that it was entitled to summary judgment on its claim for breach of contract because the May 2018 engagement letter was an agreement for TDD to provide legal services for the matter listed on the letter, as well as "all future matters." TDD argued that it fulfilled its contractual obligation pursuant to the agreement by providing legal services for appellants, and appellants breached the agreement by not paying for those services, thereby damaging TDD.

{¶ 11} Alternatively, TDD argued that it was entitled to summary judgment on its claim for unjust enrichment because it conferred a benefit on appellants by performing legal services for them, appellants knew that TDD was providing the services, and appellants' refusal to pay for those services would allow them to unjustly retain that benefit.

**{¶ 12}** Regarding its promissory estoppel claim, TDD argued that Ross repeatedly promised TDD attorneys Listati and Spellacy that he would sign the second engagement letter and pay TDD in full for all legal services TDD rendered on appellants' behalf, and that in light of its past relationship with Ross, a former attorney, TDD's reliance on Ross's repeated promises to pay was reasonable. TDD argued that it had suffered a financial loss as a result of its detrimental reliance and was therefore entitled to judgment on its promissory estoppel claim.

**{¶ 13}** Finally, with respect to its claim for action on an account, TDD argued that Exhibit A attached to its complaint, a true and accurate copy of the billing summary it emailed to Ross,[2] adequately proved its claim for monies owed on an account because it identified (1) appellants as the customer, (2) a beginning balance, (3) the dates and amounts of the invoices, and (4) the outstanding balance owed. TDD argued that the court should award it all its billed fees because, as averred by Listati, TDD's hourly rates were the normal, reasonable, and customary hourly rates for attorneys in northeast Ohio with the same level of experience as TDD's attorneys. TDD also argued that it was entitled to pre- and post-judgment interest pursuant to R.C. 1343.03(A) and (C).

**{¶ 14}** In their brief in opposition to TDD's motion for summary judgment, appellants argued that the 2018 engagement letter was not relevant to TDD's claims. Specifically, appellants noted that the letter stated: "We are very pleased that you

---

[2] Ross is the sole owner/member of AMG Marine Holdings, LLC and Fairport Harbor Holdings, Ltd.

have decided to retain us as counsel in connection with the above-captioned matter. Unless we make a different agreement in writing, *this agreement will govern all future services we may perform for * * * you in connection with the above-captioned matter*." (Emphasis added.) The captioned matter was listed as the above-referenced *PurUS Health* matter. Appellants argued that because the 2018 engagement letter specifically limited TDD's legal services to only the *PurUS Health* matter, for which TDD had been paid in full, the letter could not form the basis of a written contract for any other legal services, such as the Lake County lawsuit.

{¶ 15} With respect to TDD's unjust enrichment claim, appellants argued that TDD did not confer any benefit on appellants because they had to seek alternative counsel (Dworken & Bernstein) in the Lake County matter. They also asserted that they "did not have knowledge of, or approve of, the alleged services supposedly provided" to them. (Appellant's brief in opposition, p. 4.) Appellants next argued that TDD's promissory estoppel claim failed because TDD could not have reasonably relied upon Ross's alleged promise of payment made during the meeting with Listati and Selby because the alleged promise was made after the services had already been rendered. Finally, appellants argued that TDD's claim on an account failed because merely providing a billing summary is insufficient to demonstrate business dealings on an account.

{¶ 16} In his affidavit supporting appellants' brief in opposition, Ross averred that neither he nor any other representative of appellants ever agreed to the application of the 2018 engagement letter to the provision of legal services by TDD

in matters other than the *PurUS Health* matter and that the services contemplated by the 2018 engagement letter were completed and paid in full. He further averred that when he approached TDD regarding representation in the Lake County matter, he sought to engage Listati's services but "ultimately, attorney Listati declined representation in that matter, requiring me to seek alternative counsel." Ross averred that he then obtained representation through Dworkin & Bernstein and that he was "shocked" when he received an invoice of nearly $45,000 from TDD related to "alleged services they supposedly provided to [appellants] in th[e] Lake County matter." Ross averred that he "had not authorized such services and immediately addressed it with representatives of [TDD]."

{¶ 17} In its reply to appellants' brief in opposition, TDD argued that the express terms of the 2018 engagement letter bound appellants to pay for the legal services it performed in the Lake County matter because the agreement covered "all future services" in connection with litigation proceedings in which Ross and his business entities were defendants. TDD argued that it provided legal services to multiple parties that were connected to the matter described in the 2018 engagement letter, and therefore, by not paying for those services, appellants breached the contract.

{¶ 18} TDD argued further that even if the 2018 engagement letter did not extend to the additional legal services it provided to appellants, the 2020 agreement and Ross's repeated promises to pay for TDD's legal services in the Lake County matter created an oral contract. TDD noted that while TDD was providing those

services, appellants never expressed any reservation about the written terms of the 2020 engagement letter or the legal services being provided. In fact, TDD argued, Ross actively engaged in TDD's provision of legal services by participating in multiple meetings and attending court hearings.

{¶ 19} Regarding its unjust enrichment claim, TDD argued that appellants' claim that they received no benefit from TDD's legal services because they had to engage additional counsel was not accurate because TDD provided legal services to Ross and Fairport Harbor Holdings, Ltd. in the Lake County matter even after appellant AMG Marine Holdings, LLC obtained substitute counsel. TDD argued further that Ross's claim that he had no knowledge of and did not approve of the legal services that TDD was providing until he received a $45,000 invoice was not true, as demonstrated by Listati's calendar entries, which reflected Ross's participation in conference calls and meetings and his attendance at court hearings. TDD also asserted that Listati's affidavit demonstrated that Ross promised "throughout" TDD's representation of appellants to execute the 2020 engagement letter, and thus, appellants' argument that any promise to pay was made only after the services were provided could not be true. TDD asserted that the parties' ongoing working relationship, which included conference calls and meetings with Ross about the Lake County matter, led TDD to reasonably rely on Ross's promises to make payment for the services it was rendering.

{¶ 20} TDD also argued that Ross's affidavit was insufficient to create a genuine issue of material fact to defeat its motion for summary judgment because it

was self-serving, without any evidentiary support, and misrepresented the facts. For example, TDD pointed out that Ross's averment that Listati declined his request for representation in the Lake County matter was not factually accurate because Listati did not initially decline to represent appellants but, as established by the termination of representation letter attached to TDD's motion for summary judgment, Listati declined *further* representation of appellants after TDD had performed a substantial amount of work on the matter for which appellants refused to pay. Furthermore, TDD noted that even after Selby entered a notice of appearance for AMG Marine Holdings, LLC, TDD continued to represent Ross and Fairport Harbor Holdings, Ltd. as co-counsel with Selby, and only withdrew after Ross failed to sign the second engagement letter or make payments to TDD. TDD also argued that Ross's averment that he was not aware of and did not authorize TDD's legal services was directly refuted by Listati's calendar entries showing meetings and conference calls with Ross related to the Lake County matter.

{¶ 21} The trial court subsequently granted TDD's motion for summary judgment, entering judgment in favor of TDD in the amount of $59,679.70, plus prejudgment interest at the statutory rate beginning April 25, 2020, through the date of judgment, and post-judgment interest at the statutory rate. The court's journal entry did not state whether it was granting summary judgment on one, several, or all of TDD's claims. Appellants now appeal from this judgment.

II. **Law and Analysis**

   **A. Summary Judgment**

{¶ 22} In their first assignment of error, appellants contend that the trial court erred in granting summary judgment to TDD because the record evidence demonstrates there are disputed issues of material fact on each of TDD's claims that should have precluded the grant of summary judgment.

{¶ 23} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate. *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997).

{¶ 24} Under Civ.R. 56(C), summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. The party moving for summary judgment has the initial burden of identifying specific facts in the record that demonstrate an entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate. *Id.* If the moving party meets this burden, the burden shifts to the nonmoving party to point to specific facts in the record that demonstrate the existence of a genuine issue of material fact for trial. *Id.*

{¶ 25} Appellants contend that the trial court erred in granting summary judgment to TDD because none of TDD's claims are adequately supported by

evidence sufficient to grant summary judgment in TDD's favor. At the outset, we agree with appellants that the 2018 engagement letter is unrelated to TDD's claims in this case and cannot support TDD's claim for breach of a written contract. The 2018 letter specifically stated that Ross, Challenger Partners, LLC, and Fairport Harbor Holding, Ltd. were retaining TDD in connection with the *PurUS Health* matter and that the agreement would govern "all future services" that TDD would perform in connection with that matter. TDD's attempt to construe this language to somehow cover the Lake County matter is wholly misplaced and somewhat disingenuous. Indeed, if the 2018 engagement letter so unambiguously covered TDD's legal services for appellants in the matters identified in Listati's affidavit, as TDD contends, why did TDD prepare a second engagement letter and ask Ross to sign it?

{¶ 26} Nevertheless, our review of the record demonstrates there is no genuine issue of fact that appellants breached the oral agreement between the parties. To prevail on a breach-of-contract claim, a party must prove the existence of a contract, the party's performance under the contract, the opposing party's breach, and resulting damage. *Depompei v. Santabarbara*, 8th Dist. Cuyahoga No. 101163, 2015-Ohio-18, ¶ 20.

{¶ 27} The goal in enforcing oral contracts is to hold people to the promises they make. *Depompei* at *id.*, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 19. Ohio courts recognize that the intent to contract and the

terms of an oral contract may be determined from the parties' words, deeds, and acts, as well as their silence. *Id.*, citing *Kostelnik* at ¶ 15. Furthermore,

> whereas here a written agreement is prepared by one of the parties and submitted to the other who voices no objections to the agreement, but both parties fail to sign the written agreement but nevertheless continue the relationship contemplated by the written agreement without either party expressing any reservation as to any of the terms of the agreement as expressed in the writing, the parties have entered into an oral agreement, the terms of which are expressed in the written, even though unsigned, agreement.

*Braverman v. Spriggs*, 10th Dist. Franklin No. 77AP-298, 1997 Ohio App. LEXIS 7428, 8 (Aug. 9, 1977).

{¶ 28} Applying these principles, it is apparent that the 2020 written engagement letter, Ross's failure to object to the terms of the engagement letter, and his acceptance of and participation in TDD's provision of legal services as set forth in the engagement letter created an oral contract. In their opposition to TDD's motion for summary judgment, appellants offered no evidence that Ross ever expressed any reservations about the terms of the 2020 engagement letter after TDD submitted it to him, or about the legal services that TDD was providing to appellants even as the letter remained unsigned. Instead, as demonstrated by Listati's calendar notes, the evidence reflects that Ross actively participated in TDD's legal services by attending multiple meetings and participating in conference calls and hearings regarding the legal matters in which TDD was representing appellants. Thus, Ross's delay in signing the 2020 engagement letter does not render the agreement unenforceable, as alleged by appellants. Likewise, Ross's averment that he never

authorized TDD's legal services is directly refuted by his active participation in TDD's provision of those services.

{¶ 29} In short, the evidence demonstrates (1) there was a legally enforceable oral contract, the terms of which were reflected in the 2020 engagement letter, (2) TDD performed according to the terms of the contract, (3) appellants breached the contract by refusing to pay for services rendered, and (4) TDD suffered damages as a result. Accordingly, there is no genuine issue of material fact regarding TDD's breach-of-contract claim, and thus, the trial court did not err in granting summary judgment to TDD on this claim.

{¶ 30} Likewise, the trial court did not err in granting summary judgment to TDD on its unjust-enrichment claim. "[U]njust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 133 Ohio St.520, 528, 14 N.E.2d 923 (1938). "[T]he equitable doctrine of unjust enrichment can be used to prevent injustice." *Bank of Am., N.A. v. Calloway*, 2016-Ohio-7959, 74 N.E.3d 843, ¶ 32 (8th Dist.). To successfully claim unjust enrichment, a plaintiff must establish three things: "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Rogers v. Natl. City Corp.*, 8th Dist. Cuyahoga No. 91103, 2009-Ohio-2708, ¶ 27.

{¶ 31} The record reflects there is no genuine issue of material fact that TDD established the elements of this claim. The evidence demonstrates that beginning

in early February 2020, TDD began providing legal services to appellants and continued providing such services until April 2020. It is apparent that the services provided a benefit to appellants; the docket in the Lake County matter alone demonstrates that TDD filed numerous motions and briefs on appellants' behalf. Appellants' argument that they received no benefit from TDD's services because they "had to secure alternative counsel when the attorney they specifically sought would not take the case" is refuted by the record. The docket for the Lake County matter reflects that Listati took the case, entered a notice of appearance, and between March 17, 2020, and March 19, 2020, made four filings on appellants' behalf: a brief in opposition, an answer and a counterclaim, instructions for service, and a motion to appoint a receiver. Appellants' assertion that they received no benefit from these services because they eventually had to seek substitute counsel is nonsensical. If this court were to accept this argument, a litigant could fire his attorney after months or years of litigation and then not pay for the services rendered because he had to obtain substitute counsel. Such a result would be absurd.

{¶ 32} With respect to the second element of an unjust-enrichment claim — knowledge by the defendant of the benefit — it is apparent from the record that Ross knew that TDD was providing legal services on behalf of appellants. Ross admitted in his affidavit that he sought out TDD for representation related to the Lake County matter. Listati's calendar reflects meetings and conference calls with Ross about the matter. And in an email from Ross to Spellacy dated March 24, 2020, Ross told

Spellacy that he had had a conference call with Listati and co-counsel Selby earlier that day, and he wanted to speak with Spellacy the next morning "to discuss the case" further. Any suggestion by appellants that they did not know that TDD was performing legal services on their behalf is directly refuted by Ross's email.

{¶ 33} Finally, it would be unjust for appellants to retain the benefit of TDD's services without compensating it for the value of those services. TDD has a right to have restored to it the benefit gained at its expense by appellants, which, as reflected in the billing summary attached to its complaint, was $59,679.70. *See Fortney v. McQuillen,* 5th Dist. Ashland No. 19-COA-025, 2019-Ohio-4941, ¶ 20 ("[U]njust enrichment entitles a party to restitution of the reasonable value of the benefit conferred.") Accordingly, the trial court did not err in granting summary judgment to TDD for this amount on its unjust-enrichment claim.

{¶ 34} Because we have determined that the trial court properly granted summary judgment to TDD on its breach-of-contract and unjust-enrichment claims, we need not consider whether a grant of summary judgment on TDD's claims for promissory estoppel or action on an account would also have been proper. The first assignment of error is overruled.

## B. Apportionment of the Judgment

{¶ 35} In their second assignment of error, appellants contend that the trial court erred by not apportioning the judgment among them, resulting in a "reversible inequity." They contend, without citing to any authority or standard of review, that because TDD provided only a billing summary, rather than the actual invoices for the services rendered, "there can be no proper apportionment of any damages award amongst the three named defendants" and that without the actual invoices, it would be unjust to hold all three appellants responsible for satisfying the judgment. We find no reversible error.

{¶ 36} First, Ross did not offer any evidence in the trial court to refute TDD's assertion that Ross and his companies are "one and the same" because he is the sole owner/member of appellant companies. Furthermore, Ross has the actual invoices; in his affidavit, he admitted that he received the invoices from TDD but refused to pay them. And appellants' assertion that the billing summary is somehow not accurate because it references "Hanover Marine, LLC," who is not a party to this lawsuit, is specious. The dockets attached to TDD's motion for summary judgment demonstrate that Hanover Marine, LLC was either a plaintiff or defendant in three of the four lawsuits in which TDD represented appellants. (The federal case, in which Hanover Marine was not a party, was dismissed two days after TDD sent the second engagement letter to Ross.) One can easily surmise that the caption "Hanover Marine, LLC" on the billing summary was shorthand for identifying the

cases involving appellants for which TDD performed legal services. The second assignment of error is overruled.

### C. A Rushed Decision or Simply a Mistake?

{¶ 37} In their third assignment of error, appellants contend that the trial court "may have simply made a mistake" by ruling on the motion for summary judgment when it did because it mistakenly believed that trial was quickly approaching, even though the discovery deadlines and the trial date had been continued. Appellants also assert that the brevity of the trial court's journal entry suggests that it made a "rushed" decision; they also contend that additional discovery may have produced the actual invoices.

{¶ 38} We find no reversible error. The motion for summary judgment had been fully briefed when the trial court rendered its decision and there is nothing to suggest that the court's decision was "rushed." If appellants thought they needed to complete further discovery before responding to TDD's motion, they could have requested additional time pursuant to Civ.R. 56(F). And as discussed above, Ross admitted he had the actual invoices; thus, additional discovery was not necessary to uncover them. The third assignment of error is overruled.

### D. Prejudgment Interest

{¶ 39} In the fourth assignment of error, appellants contend that the trial court erred in awarding prejudgment interest as of April 25, 2020. Appellants have waived their right to raise this issue on appeal.

{¶ 40} It is well-settled that issues not raised in the trial court may not be raised for the first time on appeal. *Crenshaw v. Cleveland Law Dept.*, 8th Dist. Cuyahoga No. 108519, 2020-Ohio-921, ¶ 42, fn. 6, citing *Shadd v. Cleveland Civ. Serv. Comm.*, 8th Dist. Cuyahoga No. 107603, 2019-Ohio-1996, ¶ 27 ("Appellants cannot raise an issue for the first time on appeal that they did not raise to the trial court."); *Scott Fetzer Co. v. Miley*, 8th Dist. Cuyahoga No. 108090, 2019-Ohio-4578, ¶ 41 ("A party cannot raise new issues or arguments for the first time on appeal; failure to raise an issue before the trial court results in a waiver of that issue for appellate purposes.").

{¶ 41} In its motion for summary judgment, TDD asserted that it was entitled to a nondiscretionary award of prejudgment interest "at the statutory rate set forth in R.C. 5703.47 beginning on April 25, 2020, which is the date that [appellants] received the invoice for the last of the work performed by [TDD] for [appellants], which occurred on April 22, 2020." Appellants offered no response whatsoever to TDD's request for prejudgment interest in their brief in opposition to TDD's summary judgment motion. Thus, they have waived their right to challenge on appeal the trial court's award of prejudgment interest.[3] The fourth assignment of error is overruled.

---

[3] R.C. 1304.03(A) requires an award of prejudgment interest on contract claims. "Once a plaintiff receives judgment on a contract claim and requests prejudgment interest, the trial court must award prejudgment interest under R.C. 1343.03(A)." *KN Excavation LLC v. Rockmill Brewery LLC,* 5th Dist. Fairfield No. 2021 CA 00034, 2022-Ohio-3414, ¶ 36. An unjust-enrichment claim does not support an award of prejudgment

{¶ 42} Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR

---

interest under R.C. 1343.03(A). *Lycan v. Cleveland*, 2019-Ohio-3510, 142 N.E.3d 210, ¶ 53 (8th Dist.).