[Cite as *Pickrel, Schaeffer & Ebeling Co., L.P.A. v. Peterson*, 2025-Ohio-1765.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| PICKREL SCHAEFFER AND EBLING CO., LPA | : | |
| | : | |
| | : | C.A. No. 30307 |
| Appellee | : | |
| | : | Trial Court Case No. 2023 CV 04852 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas Court) |
| JEFFREY B. PETERSON | : | |
| | : | |
| Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on May 16, 2025

. . . . . . . . . . .

JEFFREY B. PETERSON, Pro Se Appellant

MICHAEL W. SANDNER, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Defendant-Appellant Jeffrey B. Peterson appeals from a judgment of the Montgomery County Court of Common Pleas, which awarded $96,067.40 in damages for unpaid legal fees to Pickrel, Schaeffer and Ebeling Co., LLC ("PSE"). For the reasons

that follow, the judgment of the trial court will be affirmed.

## I.     Facts and Procedural History

{¶ 2} In late 2019, Peterson retained PSE to help resolve a "domestic separation and business dispute involving real estate and interest in an LLC" in the common pleas court. Hearing Tr. at 10. Later, Peterson hired the firm for assistance with a replevin action in Dayton Municipal Court and the subsequent appeal.

{¶ 3} While it appears that Peterson, at least initially, made regular payments to PSE (and in fact had a $0 balance in May 2021), by August 2022, he owed the firm more than $103,000 in the "domestic separation and business dispute" case. By the time PSE stopped representing Peterson in late 2022/early 2023, he owed $91,497.66 for that case and an additional $4,569.74 for the municipal court case. Altogether, Peterson's unpaid bill was $96,067.40.

{¶ 4} On September 12, 2023, PSE filed suit against Peterson alleging breach of contract and action on account. It filed a motion for summary judgment on March 29, 2024. The motion argued that PSE had performed legal services for Peterson in a competent and diligent manner, had kept him abreast of the legal matters and the balance owed, but despite demand, Peterson failed to make payment, resulting in the balance of $96,067.40. On May 28, 2024, the trial court granted PSE's motion for summary judgment as to both the breach of contract and action on account claims. It did not, however, determine damages, and set a hearing for June 21, 2024.

{¶ 5} At the damages hearing, the trial court heard from attorney Michael Sandner, the president of PSE. Sandner testified that as a long-time practitioner in the area and

president of the firm, he was familiar with the rates charged by similar firms for similar work and believed that the rates charged to Peterson were necessary and reasonable. He also noted that the issues his firm dealt with on behalf of Peterson were novel and complex. Finally, Sandner introduced the engagement letter signed by Peterson, which outlined the hourly rates of the firm's paralegals, associates, and the partner who would be handling the case, as well as the account statements (showing the amount owed) for both matters handled by PSE.

{¶ 6} Peterson testified on his own behalf. He argued that he had regularly expressed concerns to his attorney Matthew Sorg about the slow progress of the case, especially the arbitration process, which he believed should have taken a few months as opposed to more than a year. "My line with him [Sorg] was we need to get across the finish line." Hearing Tr. at 35. Ultimately, he believed his bills were unreasonable and unnecessary.

{¶ 7} Both parties filed closing briefs in the fall of 2024. On November 6, the trial court awarded judgment against Peterson in the amount of $96,067.40, plus interest. This appeal followed.

## II.     Attorney Fees and Reasonableness

{¶ 8} In his lone assignment of error, Peterson argues that the trial court erred by granting $96,067.40 in damages (i.e. legal/attorney fees) to PSE because "no credible, legally required testimony/evidence was offered by [PSE]." Appellant's Brief at 6. We disagree.

{¶ 9} When a trial court determines the proper award of legal fees, it should

consider several factors, including "(1) time and labor, novelty of issues raised, and necessary skill to pursue the course of action; (2) customary fees in the locality for similar legal services; (3) the result obtained; and (4) the experience, reputation, and ability of counsel." *Green & Green, Lawyers v. Trimbach*, 2018-Ohio-194, ¶ 13 (2d Dist.). "As long as sufficient evidence is presented to allow the trial court to arrive at a reasonable attorney fee award, the amount of the award will not be disturbed absent an abuse of discretion." *R.C.H. Co. v. 3-J Machining Serv., Inc.*, 2004-Ohio-57, ¶ 25 (8th Dist.).

**{¶ 10}** Peterson first argues that the evidence must be provided by an independent expert; however, "in Ohio there is no steadfast rule that the 'reasonableness' of attorney fees must be proved by expert testimony." *Cleveland v. Capitalsource Bank*, 2016-Ohio-3172, ¶ 13 (8th Dist.).

**{¶ 11}** The evidence as to reasonableness may take the form of affidavits, testimony, answers, or other forms of sworn evidence. *R.C.H. Co.* at ¶ 25. "Testimony of the attorney seeking recovery of fees that the case involved complex issues, that the fees were within a reasonable range for that type of case, and that the client never questioned billing statements sent to the client constitutes sufficient evidence to establish the reasonableness of the charged fees, thereby negating the need for independent expert testimony." *Green & Green* at ¶ 14. This is particularly true where there is no documentary evidence indicating a dispute concerning the legal fees as excessive or unreasonable during the attorney-client relationship. *Id.*; *See Bales v. Forest River, Inc.*, 2019-Ohio-4160, ¶ 7, fn. 2 (8th Dist.) ("While the presentation of testimony from a 'disinterested person' or expert may be the 'better practice,' . . . it is not required to support a finding

that attorney fees are reasonable.").

{¶ 12} In this case, PSE president Michael Sandner testified that his firm had handled two matters for Peterson. One was a business dispute between Peterson's company, Abode LLC, and some of its real estate holdings. "[T]he complaint started as a verified complaint. It was twice amended, and the issues involved in the case were rather novel and complex. . . . [S]ome of the claims were subject to an arbitration clause." Hearing Tr. at 10-11. The other was "a domestic separation business dispute involving real estate and interest in an LLC. There was an action pending in the Dayton Municipal Court that started as an eviction and replevin action, and then that was related to some properties between the parties, Mr. Peterson and his partner." Hearing Tr. at 10.

{¶ 13} According to Sandner, some claims were sent to arbitration before Judge Langer and others were tried before Judge Parker in a bench trial. Both parties agreed that the arbitration took a long time and involved extensive motion practice. Ultimately, Peterson received an arbitration award of $118,000 and was awarded more than $72,000 in his common pleas court case. As to the municipal court case, the replevin count went to trial and then was appealed (*Peterson v. Booth*, 2023-Ohio-1301 (2d Dist.)). We remanded the matter back for further proceedings, so extensive briefing was invovled.

{¶ 14} Sandner also testified and presented evidence (in the form of Peterson's engagement letter) about the hourly rates of the legal professionals who worked on the case. The rates, according to Sandner, were on par with PSE's peer firms for this type of work.

{¶ 15} Sandner testified that after Sorg left the firm, he talked with Peterson about

the status of the account and reviewed the work performed and the time entries. According to Sandner, the time was billed in 1/10 of an hour increments in accordance with firm policy, and the billing corresponded to the underlying case. "I determined that the amounts were consistent with what I would expect of a case of this magnitude over the time frame this case took." Hearing Tr. at 19.

{¶ 16} Peterson's chief argument against the reasonableness of the legal fees seems to be that the arbitration process took far too long. At the hearing, he asserted that while he settled on Judge Langer to arbitrate, he would have preferred to use the American Arbitration Association and claimed that the process should have taken a fraction of the time it did. He testified that in the spring/summer of 2023, he "began to intensify [his] dissatisfaction with the billing costs and expenses involved in what should have been a four-month matter. These frustrations were voiced on a regular basis to Matt Sorg." Hearing Tr. at 35. He further stated that "all of the motion practice, all of the back and forth that went on for 25 months was unnecessary. It is unreasonable as a layman and as a consumer. I received something that I did not buy." Hearing Tr. at 35.

{¶ 17} The problem with this argument, however, is that it was Peterson who chose Judge Langer to arbitrate his case.

PSE Attorney: And ultimately, you were the one that hired Judge Langer, correct?

Peterson: I believe I signed the arbitrator's agreement. Yes.

PSE Attorney: You also made payments on your account to our office, correct?

Peterson: Correct.

Hearing Tr. at 42-43. He cannot blame PSE for the slow process that he chose.

{¶ 18} Peterson's final legal argument is that even if PSE did not need an expert to testify to the reasonableness of the legal fees in this case, Sandner was not the proper person; it should have been Matt Sorg, the attorney who actually worked on the case. He cites *Green & Green,* 2018-Ohio-194, at ¶ 14 (2d Dist.) to support his proposition. We disagree with his interpretation of that case.

{¶ 19} In *Green & Green*, we stated that "[a]n independent expert is not always required to establish the reasonableness of claimed attorney fees. Testimony of *the attorney seeking recovery of fees* . . . constitutes sufficient evidence to establish the reasonableness of the charged fees[.]" (Citations omitted.) *Id.* at ¶ 14. The language of our decision does not limit the testimony about the reasonableness of the legal fees to only the lawyer who worked on the case, but instead gives more leeway – opening the testimony to any attorney who is seeking the recovery of the fees. That option makes sense because it is often the case (as here) that a firm is the entity seeking legal fees, not just the attorney who worked on the case. It gives a firm the chance to recover legal fees in a case where the attorney has moved on or, as PSE postulates, in the instance of a young attorney who does not have the background or experience to appreciate the novelty and complexity of issues or the customary fees in the area. *See also Thrasher Dinsmore & Dolan, LPA v. Ross*, 2024-Ohio-1594 (8th Dist.) (affidavit by a partner from the firm, not the attorney who handled the underlying case, was sufficient to support summary judgment motion of law firm seeking unpaid attorney fees).

{¶ 20} Based on the evidence presented at the damages hearing, we cannot say that the trial court abused its discretion by awarding PSE attorney fees in the amount of

$96,067.40, plus interest. Peterson's assignment of error is overruled.

### III. Conclusion

**{¶ 21}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.